In re Homer I. COGGINS, Debtor.

NORWEST FINANCIAL TENNESSEE, INC., Plaintiff,

v.

Homer I. COGGINS, Arnold Weiss, Trustee, Bankplus Mortgage Corporation, and Bill Kenner, Defendants.

Bankruptcy No. 95–27414–K.
Adv. No. 95–0814.

United States Bankruptcy Court, W.D. Tennessee.

Aug. 30, 1995.

David R. Huggins, Memphis, TN, for Homer I. Coggins.

Roger A. Stone, Memphis, TN, for Norwest Financial Tennessee, Inc.

Ted I. Jones, Memphis, TN, for Bill Kenner.

Virginia Craven, Memphis, TN, for Arnold Weiss, Trustee, and Bankplus Mortg. Corp.

George W. Emerson, Jr., Chapter 13 Trustee, Memphis, TN.

### MEMORANDUM OPINION AND ORDER ON COMPLAINT

WILLIAM H. BROWN, Bankruptcy Judge.

In this Chapter 13 case, Norwest Financial Tennessee, Inc. ("Norwest") filed an adversary proceeding ("complaint") against four defendants. After the Court entered a temporary restraining order on August 2, 1995, a Consent Order was entered into between Norwest and all of the defendants except the debtor. Norwest filed an amended complaint as to the debtor, alleging that the debtor filed his Chapter 13 case in bad faith and that his case should be dismissed with prejudice to any refiling for at least one year. By agreement of Norwest and the debtor, this amended complaint was tried on its merits on August 15, 1995, after which the Court took the proceeding under advisement. The temporary restraining order hearing and the trial of this adversary proceeding were heard by this Judge sitting by interchange for

Chief Judge David S. Kennedy, to whom this case is assigned. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). This opinion contains findings of fact and conclusions of law pursuant to FED.R.BANKR.P. 7052.

## FACTUAL BACKGROUND OF ADVERSARY PROCEEDING

The proof at trial established that this was the debtor's fifth Chapter 13 filing. The first, case number 91–28570–D, was dismissed on February 13, 1992; the second, case number 92–21964–D, was dismissed on July 6, 1992; the third, case number 92–29087–K, was dismissed on August 5, 1994; the fourth, case number 94–29190–D, was dismissed on May 10, 1995, and the debtor's motion to reinstate that fourth case was orally withdrawn when set for hearing before Judge Bernice B. Donald on August 15, 1995. The present case was filed on July 20, 1995, and as pointed out at the trial by the Chapter 13 Trustee, the debtor's petition only reveals one prior case, number 92–29087.

In the debtor's most recent prior case, number 94–29190–D, an Order had been entered providing that if that case were dismissed, such dismissal would be with prejudice as to any refiling against Norwest. Notwithstanding that Order, the filing of the present case imposed an automatic stay pursuant to 11 U.S.C. § 362(a).

Subsequent to the dismissal of the debtor's prior case, the first mortgage holder, Bankplus Mortgage Corporation ("Bankplus"), advertised and conducted a foreclosure sale of the debtor's home on July 21, 1995. This sale was in technical violation of the automatic stay imposed with the filing of the present case, but that violation was not willful as Bankplus had no knowledge that the debtor had refiled for bankruptcy relief. Norwest held a second mortgage on this property, and Norwest had no actual notice from Bankplus of the foreclosure. At the foreclosure sale, the property was sold to the highest bidder, Mr. Bill Kenner, an investor who testified that he had actual knowledge that the debtor had filed a bankruptcy petition. The Consent Order between Norwest, Bankplus and its trustee, and Mr. Kenner addresses the setting aside of the foreclosure sale, which includes the restoration of Norwest's second mortgage position.

The dispute between Norwest and the debtor involves an examination of the debtor's participation in the foreclosure events and of the debtor's motive in filing the present Chapter 13 petition.

## GOOD FAITH

 Norwest's view of the evidence is that the debtor filed this case in bad faith; however, the Court has concluded that the facts and circumstances in their totality do not justify a finding of bad faith on the debtor's part. As this Court recently observed in its opinion, *Cooper v. Rogers Used Cars (In re Cooper)*, 1995 WL 495987 (Bankr.W.D.Tenn.1995), "[w]hen the debtor's good faith is an issue, the law of this Circuit is that the bankruptcy court must consider the totality of the circumstances in that particular case." *Id.; see Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah)*, 836 F.2d 1030 (6th Cir.1988); *Society National Bank v. Barrett (In re Barrett)*, 964 F.2d 588 (6th Cir.1992). "Essentially, a good faith analysis often comes down to whether the case filing or the plan proposal 'is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions.'" *In re Cooper*, 1995 WL 495987 at *3 (quoting *Matter of Love*, 957 F.2d 1350, 1357 (7th Cir.1992)). This Court has considered all of the facts and circumstances preceding and surrounding this case filing.

 Some of the facts are possible indicators of bad faith. For example, the debtor has filed four prior Chapter 13 cases, all of which were dismissed without a successful conclusion. The debtor neglected to reveal all of his prior filings in the present petition, and debtors and their counsel should be more cautious to see that their petitions are accurate. However, this omission did not harm Norwest, which was aware of the debtor's prior filings. Serial filings obviously have a negative impact upon the affected creditors. However, the *Barrett* case teach-

es us that a debtor who had previously acted in bad faith may have such a change in circumstances as to render a subsequent bankruptcy filing to be in good faith. Assuming that Mr. Coggins had at a prior point acted in bad faith toward his creditors, he has enjoyed a change in circumstances that justify a finding that this filing is in good faith toward his creditors. Specifically, the evidence established that Mr. Coggins had suffered from cancer of the prostate, which resulted in surgery. During his illness, between 1991 and 1994, Mr. Coggins was self employed and he lost much time at work, resulting in loss of income and an inability to fund his prior Chapter 13 plans. After recovery from the cancer, Mr. Coggins was able to obtain employment as a salaried service manager at a local WalMart store on June 10, 1995, where he draws $21,500 in annual salary, which is added to his $11,012 in annual Air Force retirement pay. Mr. Coggins has begun payments to the Chapter 13 Trustee for the present proposed plan, and the Trustee has mailed a payroll deduction order to WalMart so that future plan payments will be withheld so long as Mr. Coggins is employed there. Mr. Coggins testified that he would be able to make the proposed plan payments in this case.

■ Mr. Coggins did testify that he was aware of the Order of dismissal with prejudice that had been entered in his prior, most recent, case. However, the fact that Mr. Coggins refiled in the face of that Order is not necessarily an indicia of his bad faith. This Court agrees with the Honorable Bernice B. Donald in her holding that the debtor is entitled to a judicial determination of whether the debtor had a sufficient change in circumstances to justify a refiling notwithstanding such an order's entry in a prior case. *Brengettcy v. National Mortgage Co. (In re Brengettcy)*, 177 B.R. 271, 274 (Bankr. W.D.Tenn.1995). To hold otherwise would negate the holding of *In re Barrett*. If the debtor is entitled to such a hearing on change of circumstances, it can not be bad faith *per se* for the debtor to refile a Chapter 13 case after the entry of such an order in a prior case.

■ Norwest's justifiable concerns lie with the debtor's involvement in Bankplus's foreclosure sale. At the initial hearing in this adversary proceeding, when Norwest sought and obtained a temporary restraining order, the Court expressed concern as to whether the debtor had participated in the planning of the foreclosure in such a manner as to intentionally strip Norwest of its second mortgage. At that hearing the debtor did not appear nor testify. At that hearing, based upon the testimony of Mr. Bill Kenner, the purchaser at the foreclosure sale, it was apparent that Mr. Kenner had initiated contact with the debtor concerning possible refinancing of the debtor's mortgages. Mr. Kenner then proceeded, with actual knowledge that the debtor had refiled for bankruptcy relief, to purchase the property at Bankplus's foreclosure sale. Mr. Kenner testified that he was relying upon the dismissal with prejudice order that had been entered in Mr. Coggins's prior case.

However, the testimony of Mr. Coggins persuaded the Court that Mr. Coggins was unaware of all of Mr. Kenner's actions or intentions. Mr. Coggins is not a sophisticated financial investor. He was contacted by Mr. Kenner and was led to believe that a refinancing would be accomplished that would consolidate all of his debts, including the Norwest mortgage. The Court does not find that Mr. Coggins intended to defraud Norwest. In support of that finding is Mr. Coggins's demeanor as a witness and his proposed plan in this case, which included payment of the Norwest mortgage. The Court finds credibility in the debtor's explanation that he filed this Chapter 13 case when he did not hear anything from Mr. Kenner about a closing of the refinancing before the scheduled foreclosure. Desiring to keep his home, Mr. Coggins filed a new Chapter 13 believing that it would stop the scheduled sale.

There is a dispute in the testimony of the debtor and that of Mr. Cantrell of Norwest. Mr. Cantrell stated that he was not advised of the foreclosure by the debtor or by Mr. Kenner, at least until after the sale had occurred, and the Court believes Mr. Cantrell to be truthful. Mr. Coggins, on the other hand, stated that he advised Mr. Can-

trell of the pending sale. The Court finds that Mr. Coggins was confused by this entire transaction involving Mr. Kenner and that Mr. Coggins is mistaken in his recollection about his pre-sale conversations with Mr. Cantrell. Accepting that Mr. Coggins did not tell Norwest about the foreclosure sale does not lead to a finding that Mr. Coggins acted in bad faith. Mr. Coggins's confusion was obvious to the Court and is fully explained by his reliance upon Mr. Kenner, as well as upon his bankruptcy counsel in the refiling. Mr. Coggins assumed that both Bankplus and Norwest would be advised of his bankruptcy filing and he assumed that the foreclosure sale would be cancelled. After the filing, Mr. Coggins spoke to someone in his attorney's office about "holding" the bankruptcy until he heard whether the refinancing through Mr. Kenner would be accomplished. This conversation does not indicate bad faith on Mr. Coggins's part as Mr. Coggins was acting in the belief that the Kenner refinancing would pay off both mortgages.

### CONCLUSION

The Court's initial concerns with Mr. Coggins's motives as to Norwest have been satisfied after hearing and considering all of the evidence. Therefore, the Court finds that this case was not filed by the debtor in bad faith.

The Court did not have before it the confirmation of the debtor's plan, and, of course, Norwest and other creditors may have objections to the confirmation based upon issues other than good faith in the filing of the case. Therefore, this Order is entered without prejudice to a determination of such other issues as might be properly raised at the confirmation hearing.

**IT IS THEREFORE ORDERED** that the relief sought in the amended complaint of dismissal of this Chapter 13 case is denied. The administration of this case shall proceed to a confirmation hearing which is set for August 31, 1995.

**SO ORDERED.**