**In re Ernest James GLENN, Debtor.**

No. 02–35063.

United States Bankruptcy Court, E.D. Tennessee.

Dec. 20, 2002.

---

518

Gwendolyn M. Kerney, Knoxville, TN, Chapter 13 Trustee.

John P. Newton, Jr., Knoxville, TN, for Debtor.

David E. Nelson, Jr., Wagner, Nelson & Weeks, Chattanooga, TN, for Centex Home Equity Company, LLC.

### MEMORANDUM ON MOTION TO DISMISS CASE WITH PREJUDICE

RICHARD S. STAIR, Jr., Bankruptcy Judge.

This matter is before the court on the Motion by Chapter 13 Trustee to Dismiss Case With Prejudice (Motion to Dismiss) filed on November 12, 2002, in which the Chapter 13 Trustee (the Trustee) requests that this bankruptcy case be dismissed with prejudice, barring the Debtor from filing another bankruptcy case, under any chapter of title 11, for 180 days.

A hearing was held on December 18, 2002. The Debtor failed to appear, although his attorney was present. The record before the court consists of exhibits introduced into evidence at trial, the Affidavit of David E. Nelson, Jr., attorney for Centex Home Equity Company, LLC (Centex), and the testimony of Patricia McBee, paralegal to the Trustee.

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(A) and (O) (West 1993).

### I

The Debtor filed the voluntary petition initiating this Chapter 13 case on September 20, 2002. The Trustee filed her motion, entitled "Motion by Chapter 13 Trustee to Dismiss Case With Prejudice and Notice of Hearing" (Motion to Dismiss) on November 12, 2002, based upon the Debtor's failure to appear at his meeting of creditors on November 7, 2002,[1] his failure to make any plan payments to the Trustee,[2] and his repeat filings, which the Trustee contends are motivated by the Debtor's attempts to stall and/or prevent foreclosure proceedings by Centex.[3]

The record establishes the following facts regarding the Debtor's prior and current bankruptcy filings. On March 25, 1998, the Debtor filed a Chapter 7 case, number 98–31359, from which the Debtor

---

1. See 11 U.S.C.A. § 341(a) (West 1993).

2. See E.D. Tenn. LBR 2015–5.

3. On October 28, 2002, Centex filed an Objection to Confirmation. Although the court did not hear proof on the Objection, Mr. Nelson, attorney for Centex, appeared in support of the Trustee's motion.

received a discharge on October 26, 2000. On April 30, 2001, the Debtor filed a Chapter 13 case, number 01–32160, which was dismissed on December 13, 2001, on a motion by the Trustee for having a plan arrearage of $1,925.00. On February 21, 2002, the Debtor filed a Chapter 13 case, number 02–30932, which was dismissed on August 12, 2002, on a motion by the Trustee for having a plan arrearage of $1,320.00. Finally, on September 20, 2002, the Debtor filed the present bankruptcy case; however, as of the date of the hearing, he had made no payments to the Trustee and was $1,480.00 in arrears on his current Chapter 13 Plan.

In further support of her Motion to Dismiss, the Trustee introduced into evidence the Affidavit of David E. Nelson, Jr., setting forth the history of Centex's attempted foreclosures initiated against the Debtor since 2001. Prior to the Debtor's 2001 bankruptcy filing, Centex, the holder of the mortgage on the Debtor's residence, had initiated foreclosure proceedings, based upon the Debtor's having missed six monthly payments totaling $2,321.94, together with late charges.[4] Upon receiving notice of the Debtor's bankruptcy filing, Centex stopped its foreclosure, in accordance with the automatic stay provisions of 11 U.S.C.A. § 362(a) (West 1993 & Supp. 2002). After case number 01–32160 was dismissed, Centex again began foreclosing its lien encumbering the Debtor's residence, having received no payments on its mortgage during the bankruptcy case or subsequent thereto. The Debtor then

filed case number 02–30932.[5] This case was dismissed in August 2002, and once again, Centex received no payments on its mortgage during the pendency of the case or after it was dismissed. Centex initiated foreclosure proceedings for a third time, which were also halted by the Debtor's filing of the present case on September 20, 2002.[6]

The issues before the court are whether to dismiss the Debtor's Chapter 13 bankruptcy case and, if so, whether to dismiss with prejudice, imposing a 180–day bar on his re-filing a petition under title 11.

**II**

■ One significant purpose of the Bankruptcy Code is to relieve the honest but unfortunate debtor of his indebtedness so that he can make a fresh start. *In re Krohn,* 886 F.2d 123, 125 (6th Cir.1989) (citing *Local Loan Co. v. Hunt,* 292 U.S. 234, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). However, a debtor's Chapter 13 bankruptcy case must be filed in good faith. 11 U.S.C.A. § 1325(a)(3); *see also Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah),* 836 F.2d 1030, 1031 (6th Cir.1988); *In re Pike,* 258 B.R. 876, 880–81 (Bankr.S.D.Ohio 2001); *In re McCoy,* 237 B.R. 419, 422 (Bankr.S.D.Ohio 1999). "Essentially, a good faith analysis often comes down to whether the case filing or the plan proposal 'is fundamentally fair to creditors and, more generally, is the filing fundamentally fair in a manner that complies with the

---

4. Pursuant to Ms. McBee's testimony, in case number 01–32160, Centex filed a Proof of Claim on its mortgage arrearage in the amount of $2,532.99.

5. In case number 02–30932, Centex filed an arrearage claim in the amount of $8,381.26.

6. In his Affidavit, Mr. Nelson states that the Debtor's monthly payment to Centex on its

mortgage is $386.99 and that Centex has not received twenty-three of these monthly payments, for a total of $8,900.77. Centex's arrearage claim in case number 02–35063 is $11,500.06, which includes the arrearage, costs of three halted foreclosures, and force-placed insurance on the property. Additionally, the arrearage amount increases by $386.99 per month that Centex does not receive payment.

spirit of the Bankruptcy Code's provisions.'" *Norwest Fin. Tenn. v. Coggins (In re Coggins),* 185 B.R. 762, 764 (Bankr. W.D.Tenn.1995) (quoting *In re Love,* 957 F.2d 1350, 1357 (7th Cir.1992)).

Courts should consider "the totality of the circumstances surrounding the particular debtor in question" when making a good faith determination. *In re Sexton,* 230 B.R. 346, 351 (Bankr.E.D.Tenn. 1999) (citing *Soc'y Nat'l Bank v. Barrett (In re Barrett),* 964 F.2d 588, 591 (6th Cir.1992)). The analysis relies more upon the bankruptcy court's common sense and judgment than any specific factors. *Id.* The following factors, among others, should be considered in making this determination: (1) the motivation for filing for bankruptcy; (2) whether this is the first or subsequent filings; (3) the types of debts and how the debtor has dealt with his creditors; (4) whether the proposed payments are a mockery to other debtors; (5) the burden of administrating the plan; and (6) prospects for rehabilitation. *Id.* The court should consider both the debtor's prior conduct and his present circumstances. *Barrett,* 964 F.2d at 590.

Multiple filings by a debtor are not, in and of themselves, improper. *Pike,* 258 B.R. at 881 (citing *Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), and *Barrett, supra,* 964 F.2d at 591). However, a history of multiple filings and dismissals can be construed as bad faith. *See id.; McCoy,* 237 B.R. at 422. Likewise, a debtor's filing on the eve of foreclosure is not necessarily an indication of bad faith. *In re Falotico,* 231 B.R. 35, 40 (Bankr.D.N.J.1999) (citing *In re Hollis,* 150 B.R. 145, 149 (D.Md.1993)). This conduct is, however, "probative of bad faith." *Id.* at 41 (citing *In re Dami,* 172 B.R. 6, 10 (Bankr.E.D.Pa.1994)).

When a debtor has flagrantly misused the bankruptcy process, the court may impose a bar on the ability of the debtor to re-file within a specific time period. *See McCoy,* 237 B.R. at 422. "In order to prevent abuse of the bankruptcy process by bad-faith filings, courts have the authority to dismiss bankruptcy cases, [and] enjoin future filings, ... under sections 105(a) and 109(g)(1) ...." *Id.* The court may utilize this remedy on its own or in response to a Motion to Dismiss pursuant to § 1307(b). *See In re Dilley,* 125 B.R. 189, 195 (Bankr.N.D.Ohio 1991).

## III

Pursuant to § 105(a) of the Bankruptcy Code, "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C.A. § 105(a) (West 1993). "Bankruptcy courts, both through their inherent powers as courts, and through the general grant of power in section 105, are able to police their dockets and afford appropriate relief." *Casse v. Key Bank Nat'l Ass'n (In re Casse),* 198 F.3d 327, 336 (2d Cir.1999) (quoting 2 COLLIER ON BANKRUPTCY ¶ 105–5 to –7 (Lawrence P. King ed., 15th ed.1999)). This power under § 105(a) includes the authority of the court to dismiss a case with prejudice. *See McCoy,* 237 B.R. at 422; *In re Spear,* 203 B.R. 349, 354 (Bankr. D.Mass.1996).

In this case, upon examination of the totality of the evidence presented, the court finds cause to dismiss the Debtor's Chapter 13 bankruptcy case with prejudice. First, the Debtor has filed three Chapter 13 cases since April 30, 2001, each on the eve of a scheduled foreclosure sale. Second, it appears to the court that the Debtor never had any intention of following through with any of the Chapter 13 cases, as the dismissed cases had plan

arrearages of $1,925.00 and $1,320.00, respectively. Moreover, in support of this indication, in the present case, the Debtor did not appear for his meeting of creditors, and he has failed to make any payments to the Trustee, resulting in an arrearage in this case of $1,480.00. Third, the Debtor is twenty-three months behind on his mortgage payments to Centex, and consequently, his mortgage has an arrearage of $11,500.06. The Debtor has abused the bankruptcy process, using it to hold Centex hostage, while remaining in his residence without paying for it.

Taken together, all of these factors evidence a flagrant misuse and abuse of the Bankruptcy Code, and the court is persuaded that the Debtor did not file this Chapter 13 bankruptcy case in good faith. Accordingly, the Debtor's Chapter 13 bankruptcy case will be dismissed with prejudice. The Debtor will be barred from re-filing under any chapter of the Bankruptcy Code for a period of 180 days.[7]

---

[7]. Because the case will be dismissed, Centex's Objection to Confirmation is moot and will not be acted upon.